# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEYA LADAWN PEARSON,

*Plaintiff,*

vs.

Case No. 16-1404-EFM

NANCY BERRYHILL, Acting
Commissioner of Social Security,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Keya Pearson seeks review of a final decision by Defendant, the Commissioner of Social Security, denying her application for disability insurance benefits and supplemental social security income. Pearson alleges error by the administrative law judge ("ALJ"). Specifically, she argues the ALJ erred by failing to adequately discuss limitations contained in medical opinions in the record, and by failing to explain her decision not to include those limitations in her residual functional capacity ("RFC") determination. Having reviewed the record, and as described below, the Court agrees with Pearson. The Court therefore reverses the decision of the Commissioner and remands for further consideration.

## I.     Factual and Procedural Background

On April 29, 2013, Pearson filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on May 25, 2012. Her application

was denied initially on September 24, 2013, and upon reconsideration on February 28, 2014. Pearson then asked for a hearing before an ALJ. ALJ Rhonda Greenberg held an administrative hearing on January 29, 2015. Pearson appeared and testified at that hearing, as did an impartial vocational expert. Pearson was represented by counsel at the hearing.

The ALJ issued a written decision on April 30, 2015. The ALJ found that Pearson met the insured status requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Pearson suffered from the following severe impairments: degenerative joint disease of the knees and left shoulder, degenerative disc disease of the cervical spine, obesity, major depressive disorder, and anxiety with panic attacks.

The ALJ went on to find that Pearson did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determined that Pearson had the residual functional capacity ("RFC") to:

> [P]erform a range of light work as defined in 20 C.F.R. 404.1567(b), or work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday. [Pearson] can frequently, but not constantly, stoop. She can occasionally kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold and vibration. She should avoid work that requires reaching overhead; working around unprotected heights, dangerous moving machinery, or operating heavy industrial equipment. She can perform simple routine tasks in an environment that requires no more that occasional interaction with supervisors, or more than infrequent and incidental interactions with coworkers in that she need not listen or talk to coworker to perform job tasks, is not an integral part of a team and does not work in tandem with others; or any public contact.

Given Pearson's RFC, the ALJ found that she was unable to perform her past relevant work. But the ALJ determined that significant jobs existed in the national economy that Pearson

could perform.  Specifically, the vocational expert testified that an individual with Pearson's RFC was capable of working as a small products assembler, an electronics assembler, or a plastics products assembler.  Accordingly, the ALJ concluded that Pearson not been under a disability from May 25, 2012, through the date of her decision.

Pearson requested a review of the decision with the Appeals Council on June 22, 2015. That request was denied on August 28, 2016, and the ALJ's April 2015 decision became the final decision of the Commissioner.  Pearson then filed a Complaint in this Court.  Because she has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability "to

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

do physical and mental work activities on a sustained basis despite limitations from [her] impairments."[10]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which requires the ALJ to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[12] The burden then shifts to the ALJ at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III. Analysis

Pearson alleges that remand is required to correct the ALJ's consideration of the medical opinions of two doctors: Dr. Jarrod Steffan and Dr. Mark Goodman. She contends that the ALJ erred by affording substantial weight to the opinion of Dr. Steffan while simultaneously omitting restrictions contained in that opinion without a satisfactory explanation. Further, she contends the ALJ discussed some of the limitations imposed by Dr. Mark Goodman—her treating psychologist—while ignoring some other limitations without providing a reason for doing so. The Commissioner disagrees, arguing that the ALJ's RFC determination was supported by substantial evidence, and the justification for her departures from the medical opinions are reasonably discernible from her evaluation of other evidence.

---

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Id.* at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

**A. Dr. Steffan**

Pearson first challenges the ALJ's consideration of the medical opinion of Dr. Steffan. Dr. Steffan completed a medical source statement indicating that Pearson would be moderately limited in her ability to: (1) understand and remember complex instructions, (2) carry out complex instructions, (3) make judgments on complex work-related decisions, (4) interact appropriately with supervisors, (5) interact appropriately with co-workers, and (6) respond appropriately to usual work situations and to changes in a routine work setting.

The ALJ's discussion of Dr. Steffan's medical opinion acknowledged all of the moderate limitations noted above. The ALJ noted that Dr. Steffan's opinion was "internally consistent and consistent with the evidence as a whole" and afforded it substantial weight. Indeed, the RFC appears to reflect many of Dr. Steffan's limitations. The ALJ determined that Pearson can only perform simple, routine tasks, which reflects limitations (1), (2), and (3). And the ALJ limited Pearson to an environment that requires less than occasional interaction with supervisors and infrequent interaction with coworkers, which reflects limitations (4) and (5). But none of the limitations set forth in the RFC reflect limitation (6)—that Pearson would be moderately limited in her ability to respond appropriately to usual work situations and changes in a routine work setting.

While the other limitations address Pearson's ability to understand information[14] or interact with others,[15] limitation (6) addresses Pearson's ability to adapt.[16] Each of those

---

[14] 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00E(1).

[15] 20 C.F.R. § 404, Subpart P, App'x 1, §12.00E(2).

[16] 20 C.F.R. § 404, Subpart P, App'x 1, §12.00E(4) ("This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes . . . .").

separate abilities is required in order to perform unskilled work.[17]  Therefore, a limitation on either skill would impact a determination as to whether an individual is capable of performing unskilled work.  Dr. Steffan clearly opined that Pearson's ability to adapt would be moderately limited, but despite affording that opinion substantial weight, the ALJ failed to incorporate such a limitation in her RFC.  Pearson contends that such an omission, without a suitable explanation, constitutes error.  The Court agrees.

It is well settled that "an ALJ must consider every medical opinion in the record."[18]  The ALJ must discuss the weight given to each medical opinion.[19] Where the RFC assessment conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted.[20]  And although there is no requirement that the RFC directly correspond to a specific medical opinion in the record,[21] an ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."[22]  Rather, an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[23]

Here, the ALJ discussed the moderate limitations contained in Dr. Steffan's medical opinion, and went on to afford that opinion substantial weight.  But in her RFC assessment, the

---

[17] SSR 96-9P, 1996 WL 374185, at *9 (1996); *see also Jaramillo v. Colvin*, 576 F. App'x 871, 874 (10th Cir. 2014) (noting that mental functions are requisites for work at any skill level).

[18] *Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011).

[19] *Wilson v. Colvin*, 541 F. App'x 869, 871 (10th Cir. 2013).

[20] *Sullivan v. Colvin*, 519 F. App'x 985, 987-88 (10th Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *7 (1996)).

[21] *Chapo*, 982 F.3d at 955.

[22] *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

[23] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

ALJ failed to include any limitations related to Pearson's ability to adapt. Therefore, the RFC failed to incorporate all of the limitations set forth by Dr. Steffan. To be sure, the ALJ's failure to adopt each limitation is not error in and of itself. But she provided no explanation for why she departed from a medical opinion to which she afforded "substantial weight," and her failure to do so constitutes error.[24]

The Commissioner argues that the ALJ's reasons for rejecting certain limitations contained in Dr. Steffan's medical opinion are reasonably discernible from her evaluation of the other evidence. Specifically, the Commissioner contends that the ALJ implicitly rejected the ability to adapt limitation, and an explanation for this implicit rejection can be found in the ALJ's discussion of the opinions of the state agency consultants and Dr. Goodman. The Court disagrees. The ALJ afforded little weight to Dr. Goodman's opinion that Pearson's ability to respond appropriately to changes in the workplace would be *markedly* limited. That discussion does not address the issue of why the ALJ rejected Dr. Steffan's opinion that Pearson was *moderately* limited in the same area. As for the state agency consultants, the ALJ's discussion of those opinions contains no reference to Pearson's ability to respond to changes in the workplace, and the ALJ noted that her RFC assessment was "more restrictive than that of the State agency medical consultant." Nothing in the ALJ's discussion of other medical opinions explains her failure to incorporate Dr. Steffan's limitations regarding Pearson's ability to adapt. The ALJ's

---

[24] *Martinez*, 422 F. App'x at 724 ("The error lies not in how the ALJ weighed [the medical opinion], but in his failure to include all of the limitations found [in that opinion] without explaining why he rejected them, especially in light of his conclusion that [the opinion] was entitled to 'great weight.' "); *Washington v. Colvin*, 2014 WL 4145547, at *4 (finding error where "[d]espite giving 'substantial' weight to the opinions of Dr. Jessop, the ALJ's decision failed to offer any explanation for not including some of the limitations contained in his mental assessment.").

failure to explain her rejection of Dr. Steffan's limitations cannot be rescued by the Commissioner's "post hoc attempt to justify to decision."[25]

If the ALJ intended not to include Dr. Steffan's moderate restrictions regarding Pearson's failure to adapt in the RFC, she should have explained her reason for doing so.[26]  Or if she intended to adopt those limitations, she should revise the RFC to include them.[27]  Either way, the Court must reverse and remand for further consideration of Dr. Steffan's medical opinion.

## B.    Dr. Goodman

Pearson also argues that the ALJ committed a similar error in her consideration of Dr. Goodman's opinion.  As with Dr. Steffan, she contends that the ALJ failed to adequately discuss all of the limitations contained in Dr. Goodman's medical opinion.

Dr. Goodman opined that Pearson was markedly limited in her ability to: (1) complete a normal workday and workweek without interruption from psychologically based symptoms, (2) get along with coworkers or peers, (3) respond appropriately to changes in the work setting, and (4) travel in unfamiliar places or use public transportation.  The ALJ acknowledged those limitations and gave a suitable explanation for her decision to afford that aspect of Dr. Goodman's opinion little weight.  But Dr. Goodman also opined that Pearson was moderately limited in her ability to: (5) maintain attention and concentration for extended periods, (6) perform activities within a schedule, (7) work in coordination with or proximity to others without being distracted by them, and (8) accept instructions and respond appropriately to criticism from

---

[25] *Martinez*, 422 F. App'x at 725.

[26] *Wilson*, 541 F. App'x at 874.

[27] *Id.*

supervisors.[28]  The ALJ did not address these moderate limitations in her discussion of Dr. Goodman's opinion.  Pearson contends that her failure to do so was error; the Court agrees.

As noted above, an ALJ must consider every medical opinion in the record.[29]  Although the ALJ properly discussed Dr. Goodman's marked limitations, and adequately explained her reasons for affording them little weight, she provided no such discussion with regard to Dr. Goodman's moderate limitations.  And these limitations were not included in Pearson's RFC.  Therefore, the moderate limitations were either rejected or overlooked; whichever the case, the ALJ's failure to discuss them is error.  For the reasons stated above with regard to the ALJ's discussion of Dr. Steffan's opinion, remand is required for further consideration of the opinion of Dr. Goodman.

The Commissioner argues that although the ALJ did not specifically address the moderate limitations, it was clear that the ALJ afforded little to weight to the entirety of Dr. Goodman's medical opinion.  But that is not at all clear to the Court.  The ALJ closed her discussion of Dr. Goodman's medical opinion by noting that "[b]ecause the *marked limitations* assessed by Dr. Goodman lack support from treatment notes or objective findings and is not consistent with the other evidence of record, *they are given little weight*" (emphasis added).  If the ALJ meant to afford little weight to the entirety of Dr. Goodman's opinion, she would have

---

[28] In his notes, Dr. Goodman checked the box for both "moderate" and "marked" limitations with regard to Pearson's ability to respond appropriately to changes in the work setting.  Apparently, the ALJ resolved any doubts about this apparent error in Pearson's favor by determining that Dr. Goodman considered that limitation marked, and not moderate.

[29] *Martinez*, 422 F. App'x at 724.

said so. Instead, she specifically singled out the marked limitations as receiving little weight. Meanwhile, the moderate limitations went unaddressed.[30]

Furthermore, the Commissioner argues that substantial evidence in the record would support a rejection of the moderate limitations contained in Dr. Goodman's opinion. Once again, these post hoc justifications cannot correct the ALJ's failure to adequately discuss Dr. Goodman's medical opinion. The ALJ erred by failing to explain her apparent rejection of the moderate limitations contained in Dr. Goodman's medical opinion. Therefore, remand is required for further consideration of his opinion.

### IV.    Conclusion

Because the ALJ failed to sufficiently explain her apparent rejection of certain limitations contained in the opinions of both Dr. Steffan and Dr. Goodman, the Court reverses and remands for further proceedings. On remand, the ALJ should either consider all of the limitations contained in the medical opinions of Dr. Steffan and Dr. Goodman. If the ALJ chooses not to incorporate any limitations, she must provide a legally sufficient explanation for that decision.

**IT IS THEREFORE ORDERED** the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the memorandum and order.

---

[30] Even if the ALJ's statement was meant to apply to the entirety of Dr. Goodman's opinion, such broad discussion is error. *See Trujillo v. Colvin*, 626 F. App'x 749, 751 (10th Cir. 2015).

**IT IS SO ORDERED**.

Dated this 9th day of August, 2017.

Eric F Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE